**Stephen H. Buckley**, OSB #80178
E-mail:  shb@brownrask.com
**Paul G. Dodds**, OSB #87203
E-mail: pgd@brownrask.com
Brownstein, Rask, Sweeney, Kerr,
  Grim, DeSylvia & Hay, LLP
1200 S.W. Main Street
Portland, OR  97205-2040
Telephone: (503) 221-1772
Facsimile:  (503) 221-1074

        Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TRUSTEES OF THE OREGON-WASHINGTON CARPENTERS-EMPLOYERS HEALTH AND WELFARE TRUST FUND, et al. | Case No. 10-CV-1047-KI |
| Plaintiffs, | PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| ANDERS CERTIFIED WELDING, INC. | |
| Defendant. | |

## <u>TABLE OF CONTENTS</u>

I. Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.     The Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.     The Compliance Agreement Between the Union and Defendant. . . . . . 3

      C.     The Master Labor Agreements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      D.     The Terms of the Trust Agreements that Created the Trust Funds. . . . 6

      E.     The Work Performed by Defendants' Employees. . . . . . . . . . . . . . . . . . 7

      F.     The Payroll Examinations and Results Thereof. . . . . . . . . . . . . . . . . . 8

      G.     Defendant's Untimely Effort to Terminate the Compliance
             Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      H.     Defendant's Attempt to Withdraw its Recognition of the Union. . . . . . . 11

III. Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      A.     Plaintiffs are Entitled to Summary Judgment. . . . . . . . . . . . . . . . . . . 11

            1.     There is no Dispute Over the Terms of the Applicable Labor
                  Agreements, the Nature of the Work Performed by Defendant's
                  Employees, the Number of Hours Worked by those Employees,
                  or the Amount of the Fringe Benefit Contributions and Union
                  Dues Owed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            2.     Plaintiffs are Entitled to Liquidated Damages and Interest. . . . . . 11

            3.     The Trust Funds are Entitled to the Cost of the Payroll
                  Examination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            4.     The Trust Funds are Entitled to their Reasonable Attorney's
                  Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

5.      Defendant's Arguments Lack Merit. . . . . . . . . . . . . . . . . . . . . . 14

(a)     This Court has Subject Matter Jurisdiction. . . . . . . . . . .  14

(b)     The Requisite Mutual Assent Exists. . . . . . . . . . . . . . . .  21

(c)     Defendant's NLRB Contract Bar Rule Argument
        is Inapposite.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

(d)     Plaintiffs are not Estopped from Seeking to Recover
        the Contributions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

B.      Defendant is not Entitled to Summary Judgment. . . . . . . . . . . . . . . . . . 26

IV.  Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

TABLE OF AUTHORITIES

Cases

*Carpenters Local Union No. 345 Health and Welfare Fund*
    *v. W.P. George Construction Co.*,
    792 F.2d 64 (6th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*El Torito-La Fiesta Restaurants, Inc. v. National Labor Relations Board*,
    929 F.2d 490 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Employee Painters' Trust v. J&B Finishes*,
    77 F.3d 1188 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Irwin v. Carpenters Health and Welfare Trust Fund for California*,
    745 F.2d 553 (9th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Laborers Health and Welfare Trust Fund for Northern California*
    *v. Advanced Lightweight Concrete Co., Inc.*,
    484 U.S. 539 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 17

*Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*,
    185 F.3d 978, 984 (9th Cir.), *cert denied*, 528 U.S. 1156 (1999). . . . . . . . . . . 14

*National Labor Relations Board v. Cook County School Bus, Inc.*,
    283 F.3d 888 (7th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Northwest Administrators, Inc. v. Albertson's, Inc.*,
    104 F.3d 253 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Office & Professional Employees International Union, Local 95*
    *v. Wood County Telephone Company*,
    408 F.3d 314 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 17, 18

*Operating Engineers Pension Trust v. A-C Company*,
    859 F.2d 1336 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Operating Engineers Pension Trust*
    *v. Beck Engineering & Surveying Company*,
    746 F.2d 557 (9th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Operating Engineers Pension Trust v. Cecil Backhoe Service, Inc.*,
    795 F.2d 1501 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 25

*UA Local 343 of the United Association of Journeymen & Apprentices of the
    Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO
    v. Nor-Cal Plumbing, Inc.*,
    48 F.3d 1465 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

<u>Statutes</u>

Employee Retirement Income Security Act,
    29 U.S.C. § 1001 *et seq*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Labor Management Relations Act,
    29 U.S.C. § 141  *et seq*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

ORS 82.010(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

29 U.S.C. § 142(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

29 U.S.C. § 142(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

29 U.S.C. § 152(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

29 U.S.C. § 158(a)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

29 U.S.C. § 185(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

29 U.S.C. § 1002(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

29 U.S.C. § 1002(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

29 U.S.C. § 1002(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

29 U.S.C. § 1002(12). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

29 U.S.C. § 1002(37)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

29 U.S.C. § 1132(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

29 U.S.C. § 1132(g)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17

29 U.S.C. § 1132(g)(2)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

29 U.S.C. § 1132(g)(2)(E).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

PAGE  iv -    PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY
               JUDGMENT

29 U.S.C. § 1145. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15, 17

29 U.S.C. §§ 1301-1461. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

29 U.S.C. § 1392(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15, 18

Court Rules

L.R. 56-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

I.  INTRODUCTION

This is an action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*, and the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq*, to collect unpaid fringe benefit contributions and union dues, and associated liquidated damages, interest, attorney's fees, and payroll examination fees. The sums claimed are due from defendant under a compliance agreement[1] executed by the Oregon State District Council of Carpenters and Its Affiliated Local Unions ("the Union")[2] and defendant that, among other things, requires defendant to pay fringe benefit contributions and union dues on behalf of its employees who perform work covered by master labor agreements between the Pacific Northwest Regional Council of Carpenters and the General and Concrete Contractors Association, Inc. ("GCCA") and the Oregon-Columbia Chapter Associated General Contractors of America, Inc. ("AGC").

Plaintiffs employed a certified public accounting firm to review defendant's payroll books and records to determine if defendant paid all contractually required fringe benefit contributions and union dues to the plaintiffs on behalf of its employees who performed work covered by the master labor agreements.  The certified public

---

[1]  A "compliance agreement" or "short form agreement" is an agreement by which an employer "agrees to be bound by a collective bargaining agreement negotiated by a union and a multi-employer bargaining group representing [employers] within a particular jurisdiction and pays contributions according to the terms of such agreements."  *Carpenters Local Union No. 345 Health and Welfare Fund v. W.P. George Construction Co.*, 792 F.2d 64, 68 (6th Cir. 1986).

[2]  The Union is now known as the Pacific Northwest Regional Council of Carpenters.  Auvil Dec., ¶ 10; Ashback Dec., ¶ 2.

PAGE  1 -    PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY JUDGMENT

accounting firm issued a payroll examination report covering the period of July 1, 2006 through June 30, 2010 finding that defendant owes $186,800.43 in fringe benefit contributions and union dues on behalf of its employees who performed work covered by the master labor agreements.

Defendant filed a motion for summary judgment asking the court to rule that it is not liable to plaintiffs in any amount. Plaintiffs filed a cross-motion seeking summary judgment for the fringe benefit contributions and union dues found due and owing by the certified public accounting firm, together with liquidated damages, interest on the delinquent fringe benefit contributions and union dues, the cost of conducting the payroll examination, attorney's fees and court costs. This memorandum addresses both motions.

## II. FACTS[3]

### A. The Parties

The plaintiffs are the trustees of four trust funds created by written trust agreements (collectively "the Trust Funds") and the Union. The Oregon-Washington Carpenters-Employers Health and Welfare Trust Fund ("Health and Welfare Fund"), Oregon-Washington Carpenters-Employers Vacation-Savings Trust Fund ("Vacation Fund"), and Oregon-Washington Carpenters-Employers Apprenticeship and Training Trust Fund ("Apprenticeship Fund") are "employee welfare benefit plans" as that term is

---

[3] In support of its motion for summary judgment, defendant submitted a concise statement of material facts. Because such statement is no longer required, *see* Commentary following L.R. 56-1, plaintiff does not submit a response thereto as was required by *former* LR 56-1. Plaintiffs do not, of course, concede that all of the facts set forth in defendant's statement are either undisputed or relevant to the present motion.

PAGE 2 -    PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY
            JUDGMENT

defined in ERISA, 29 U.S.C. § 1002(1).  Amended Complaint, ¶2; Answer to Amended

Complaint, ¶ 2.

The Oregon-Washington Carpenters-Employers Pension Trust Fund ("Pension

Fund") is an "employee pension benefit plan" as that term is defined in ERISA, 29

U.S.C. § 1002(2)(A).  Amended Complaint, ¶ 2; Answer to Amended Complaint, ¶ 2.

Numerous employers pay fringe benefits to the Health and Welfare Fund, the

Vacation Fund, the Apprenticeship Fund, and the Pension Fund, and these Trust Funds

are "multiemployer plans" as that term is defined in ERISA, 29 U.S.C. § 1002(37)(A).

Amended Complaint, ¶ 2; Answer to Amended Complaint, ¶ 2.

The Union is a labor organization.  Plaintiff Pacific Northwest Regional Council of

Carpenters is the successor to the Oregon State District Council of Carpenters and the

Southwest Washington District Council of Carpenters.  Ashback Dec., ¶ 2.

Defendant is an Oregon corporation.  Amended Complaint, ¶ 3; Answer to

Amended Complaint, ¶ 3.  At all times material to this proceeding, (July 1, 2006 to June

30, 2010), defendant has been an "employer" as that term is defined in ERISA, 29

U.S.C. § 1002(5) and the LMRA, 29 U.S.C. § 152(2), and had been engaged in an

"industry or activity affecting commerce" as defined in ERISA, 29 U.S.C. § 1002(12)

and the LMRA, 29 U.S.C. § 142(1); (3). *Id*.

     B.  <u>The Compliance Agreement between the Union and Defendant</u>

On July 20, 1995, defendant and the Union executed a Carpenters Compliance

Agreement ("Compliance Agreement").  Ashback Dec., ¶ 2, and Ex. A.  The

Compliance Agreement begins by stating that

PAGE  3 -    PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY
             JUDGMENT

[t]he undersigned Employer hereby agrees with the Oregon State District Council of Carpenters and Southwest Washington District Council of Carpenters and its affiliated local union, (hereinafter referred to as "Union"), <u>that it will be bound and abide by all the terms, including wages, hours, and working conditions set forth in the principal Agreements shown below, and the terms and conditions of all successive principal Agreements as may be executed by the signatory parties thereto</u>:

Master Labor Agreement          AGC [ ]  GCCA [ ]  COMP [x]

*Id*. (Emphasis added).

The Compliance Agreement continues:

[t]he undersigned Employer agrees to be bound by the Agreements governing, and to make contributions to the Oregon-Washington Carpenters-Employers Health & Welfare, Dental, Pension, Apprenticeship & Training, and Vacations-Savings Trust Funds, and shall further be bound by  *  *  * any amendments, modifications, extensions, supplementation's (sic), and renewals of any of the Agreements set forth above, .  .  .

*Id*.

The Compliance Agreement also provides:

<u>[t]his Agreement shall be effective as of the date hereof, and shall continue in effect during the terms of the applicable Agreements referred to above, and during the term of all successive Agreements</u>.  Either party may terminate this Agreement as of the termination date specified in the principal Agreements, or on the termination date specified in any successive Agreement, by giving the other party notice of an intention to terminate, by certified or registered mail, at least 90 but not more than 120 days in advance of such termination date.

*Id*. (Emphasis added).

## C.  <u>The Master Labor Agreements</u>

The checked box "COMP" in the Compliance Agreement means that the Union and the defendant will be bound by Master Labor Agreements ("MLAs") that the Union negotiates with two multi-employer bargaining associations, the GCCA and the AGC.

Ashback Dec., ¶ 2.

PAGE  4 -    PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY
                        JUDGMENT

At the time defendant and the Union executed the Compliance Agreement, both the GCCA MLA and the AGC MLA then in place covered the period of June 1, 1993 through May 31, 1997.  Ashback Dec., ¶¶ 4, 5.  Both of the MLAs were subsequently replaced by successive MLAs on various occasions.  *Id*.  The most recent GCCA MLA at issue in the present case covers the period of June 1, 2008 through May 31, 2013, and the most recent AGC MLA at issue in the present case covers the period of June 1, 2009 through May 31, 2011.  *Id*.

The MLAs describes both the territorial jurisdiction and craft jurisdiction covered by the MLAs.  Ashback Dec., ¶ 4, and Exs. B and C; ¶ 5, and Exs. D and E.  The territorial jurisdiction consists of the state of Oregon, the Washington counties of Klickitat, Skamania, Clark, Cowlitz, Wahkiakum, and a portion of Pacific County.  *Id*.[4] The craft jurisdiction consists of "all types of construction work coming within the jurisdiction of the United Brotherhood of Carpenters and Joiners of America as historically recognized by the AFL-CIO Building and Construction Trades Department." *Id*.[5]  Work that is within both the territorial and craft jurisdiction set forth above is referred to herein as "bargaining unit work."

The MLAs require an employer to pay fringe benefit contributions to the Trust Funds and union dues to the Union, at specified hourly rates, on behalf of its employees who perform bargaining unit work.  Ashback Dec, ¶ 6, and Exs. F-P.

---

[4]  This provision is located in Article 1 of both of the MLAs.

[5]  This provision is located in § 2.1 of both of the MLAs.

PAGE  5 -    PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY
                   JUDGMENT

D.  <u>The Terms of the Trust Agreements that Created the Trust Funds</u>

The Trust Agreements that created the Trust Funds contain identical provisions that concern issues applicable to this case such as the date fringe benefit contributions are due, liquidated damage and interest provisions in the event fringe benefit contributions are not paid by the due date, and the obligation of an employer to pay attorney's fees and payroll examination fees.  Pertinent provisions of the Trust Agreements that created the Trust Funds in effect from July 1, 2006 through June 30, 2010 are set forth below:

ARTICLE III
CONTRIBUTIONS

**3.1. <u>Due Date</u>**.  Contributions shall be due and payable at the principal office of the Fund in regular monthly installments.  Each monthly Contribution shall be made promptly, and in any event made so as to be received on or before the 20th day of the calendar month in which it becomes due ("due date").  For purposes of assessing liquidated damages and interest, payments shall be delinquent if not received at the Fund office on or before the 25th day of such calendar month.  Each monthly Contribution shall include all payments which have accrued in the interim for work performed up to the close of the Individual Employer's payroll period ending during and closest to the last day of the preceding calendar month.  Each monthly Contribution shall be accompanied by a report in a form prescribed by the Board of Trustees.

\* \* \*

**3.4 <u>Liquidated Damages and Interest</u>**.  The parties recognize and acknowledge that the regular and prompt payments of Contributions is essential to the maintenance in effect of the Plan, and that it would be extremely difficult and impracticable to fix the actual expense and damage to the Fund and the Plan which would result from the failure of an Individual Employer to pay Contributions in full within the time provided under 3.1.  Therefore, the amount of damage to the Fund and the Plan resulting from any such failure shall be one percent of the amount of all delinquent Contributions from the due date of the Contribution until paid for each month such Contributions are delinquent, which amount shall become due and payable to the Fund as liquidated damages and not as a penalty, on the day immediately following the date on which the Contribution or

PAGE  6 -    PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY
                    JUDGMENT

Contributions become delinquent and shall be in addition to said delinquent Contribution or Contributions.

In addition to the foregoing, interest shall accrue at the rate of 1 percent a month on all delinquent Contributions from the due date of the Contribution until paid. The Trustees may, but need not, agree to a lesser interest rate or may waive all or a portion of the accrued interest.

Notwithstanding the above two paragraphs, when an Individual Employer makes a delinquent Contribution which is received after the 25th of the month in which it was due and payable, but on or before the 20th day of the following month, the liquidated damages and interest payment provided for in the preceding paragraphs shall be waived permanently unless the Individual Employer has been assessed liquidated damages or interest charges (whether subsequently waived or not) with respect to an of the 12 calendar months immediately preceding the month in which the delinquent Contribution was due.

**3.5** **Enforcement Action**.  In the case of failure of an individual Employer to make required Contributions, the Trustees may take necessary legal action to collect such Contributions, interest, liquidated damages, reasonable audit fees, reasonable paralegal and attorney fees incurred prior to trial, at trial or on appeal, any costs of such action or suit, and any other damages to the Fund or Plan caused by such failure to make said Contributions.  Continued failure to make prompt Contributions or failure to make any other required payments shall be deemed a breach of the Collective Bargaining Agreements by the Individual Employer, and, in such event, the parties to the Trust Agreement may jointly or severally bring action against the Individual Employer in law or in equity or may use other economic action to either compel compliance with the Trust Agreement as well as the Collective Bargaining Agreements, or as well to require the Individual Employer to make any and all payments due or to become due by the Individual Employer under the terms of the Trust Agreements.

Auvil Dec., ¶§ 11-14, and Exs. B-E.

E.  The Work Performed by Defendant's Employees

Between July 1, 2006 and June 30, 2010, defendant employed a number of

employees who performed bargaining unit work and did not have fringe benefit

contributions and union dues paid to the Trust Funds and the Union as required by the

Compliance Agreement and the MLAs.   Ratliff Dec, ¶¶ 6-8, Ex. A.  These employees

PAGE  7 -    PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY
                    JUDGMENT

were Jeffrey Ingrahm, Michael Livermore, Theodore Overholt, DeWayne Riedman,

Michael Snell, and Timothy Wishart.  Ratliff Dec., ¶¶ 6-8, and Ex. A.

The work performed by the employees was "field welding" work, including "tilt up

work," which is a subset of field welding.  Overholt Depo, pp. 18-19; 31-32, 34-35; 44-

45.[6]  In fact, defendant did not keep timecards for its employees because it already

knew the kind of work that they did, field welding.  *Id*. at 27-28.  Defendant also

acknowledged that the only difference between work that it believed was bargaining

work and "non union" work was whether or not the general contractor was affiliated with

the Union; the type of work performed was all the same.  *Id*. at 44-45. "Field welding"

and "tilt up welding" work is within the craft jurisdiction of the Union.  Ashback Dec., ¶ 7.

Defendant paid fringe benefit contributions and union dues for employees

Overholt and Livermore, but did not make payments for all of the hours of bargaining

unit work they performed.  Ratliff Dec., ¶¶ 6-8, and Ex. A.  Defendant paid no fringe

benefit contributions or union dues for bargaining unit work performed by employees

Ingrahm, Riedman, Snell, and Wishart.  *Id*.

F.  The Payroll Examinations and Results Thereof

Plaintiffs conducted a payroll examination defendant's payroll books and records

for the time period July 1, 2006 through June 30, 2010 in order to determine whether

defendant paid all contractually required fringe benefit contributions and union dues to

plaintiffs.  Ratliff Dec., ¶¶ 6-10.  The examination was conducted by Pauly, Rogers &

---

[6]  The referenced pages of the Overholt Deposition are attached as Exhibit A to
the accompanying Declaration of Cary R. Cadonau.

PAGE  8 -   PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY
            JUDGMENT

Co., P.C. ("the Pauly Firm"), a certified public accounting firm in Tigard, Oregon.  Ratliff Dec, ¶¶ 1, 6-10.  The accompanying declaration of Earl Ratliff describes in detail the payroll examination process.  *See id*, ¶¶ 4-10.  The Pauly Firm determined the number of hours of bargaining unit work performed by Jeffrey Ingrahm, Michael Livermore, Theodore Overholt, DeWayne Riedman, Michael Snell, and Timothy Wishart during the payroll examination period for which fringe benefit contributions and union dues were not paid.  *Id*, ¶¶ 6-8.  The Pauly Firm then multiplied the number of unreported hours worked by these employees by the hourly fringe benefit contributions and union dues rates as established in the Master Labor Agreements.  *Id*., ¶¶ 8-9, and Exs. A and B.  After determining the amount of delinquent fringe benefit contributions and union dues, the Pauly Firm then calculated liquidated damages and interest in accordance with the terms of the Trust Agreements that created the Trust Funds and calculated interest on the delinquent union dues at the rate of 9% per annum from the due date of payment in accordance with ORS 82.010(1).  *Id*.

The payroll examination report concluded that defendant owes the following amounts to plaintiffs:  $186,800.43 in fringe benefits contributions and union dues; $56,161.06 in interest calculated through January 20, 2011, with interest continuing to accrue on the unpaid fringe benefit contributions ($171,812.02) at the rate of 12% per annum from January 21, 2011, through entry of judgment, and interest continuing to accrue on the unpaid union dues ($14,988.41) at the rate of 9% per annum from January 21, 2011, through entry of judgment; plus $30,199.33 in liquidated damages as of January 20, 2011, with liquidated damages continuing to accrue in an amount equal

PAGE  9 -    PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY
             JUDGMENT

to one percent (1%) of the unpaid fringe benefit contributions ($171,812.02) for each

monthly period on and after January 20, 2011, that they remain unpaid.  Ratliff Dec.,

¶ 8, and Ex. A.

    G.  <u>Defendant's Untimely Effort to Terminate the Compliance Agreement</u>

       On November, 19, 2009, defendant's president, Theodore A. Overholt, wrote to

the Union stating that "We will no longer belong to the Pile Drivers Union as we have for

the past 20 years.  *  *  *  Effective the end of this month, November 30th, 2009, we will

withdraw our participation in the union."  Cadonau Dec., ¶ 6, and Ex. C.  As noted

above, the Compliance Agreement specifies when one party may terminate it:

> [t]his Agreement shall be effective as of the date hereof, and shall continue in
> effect during the terms of the applicable Agreements referred to above, and
> during the term of all successive Agreements.  Either party may terminate this
> Agreement as of the termination date specified in the principal Agreements, or
> on the termination date specified in any successive Agreement, by giving the
> other party notice of an intention to terminate, by certified or registered mail, at
> least 90 but not more than 120 days in advance of such termination date.

Ashback Dec., ¶ 2, and Ex. A.

       The GCCA MLA then in effect had a termination date of May 31, 2013.  Ashback

Dec, ¶ 5, and Ex. E.  The AGC MLA then in effect had a termination date of May 31,

2011.  Ashback Dec, ¶ 4, and Ex. C.  Because defendant's request was not made

within the times authorized by the Compliance Agreement, the Trust Funds' attorney

wrote to Mr. Overholt and told him that his request was untimely, and that defendant

remained obligated to make fringe benefit contributions.  Overholt Dec,  ¶ 6, and Ex. 3.

PAGE  10 -   PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY
                 JUDGMENT

H.  Defendant's Attempt to Withdraw Union Recognition

On March 25, 2011, defendant's president sent a letter to the Union stating that

defendant's employees no longer wished to be represented by the Union, and that

defendant was withdrawing its recognition of the Union as its collective bargaining

representative.  Overholt Dec., ¶ 4, and Ex. 2.

III.  ARGUMENT

A.  Plaintiffs are Entitled to Summary Judgment

1.    There is no Dispute Over the Terms of the Applicable Labor Agreements,
      the Work Performed by Defendant's Employees, the Number of Hours
      Worked by those Employees, or the Amount of the Fringe Benefit
      Contributions and Union Dues Owed

There is no dispute that defendant executed the Compliance Agreement, and

there is no dispute over the terms of the Compliance Agreement, or the terms of the

incorporated MLAs or Trust Agreements.  Nor is there any dispute over the accuracy of

the payroll examination conducted by the Pauly Firm, or its calculation of sums due.

The sums due are set forth in section II(F), above.

2.    Plaintiffs are Entitled to Liquidated Damages and Interest

The Trust Funds are entitled to liquidated damages and interest under the terms

of ERISA and the Trust Agreements.  ERISA provides that in an action to recover

delinquent contributions in which a judgment is entered in favor of the plan,

the court <u>shall</u> award the plan –

(A) the unpaid contributions,
(B) interest on the unpaid contributions,
(C) an amount equal to the greater of –
        (i) interest on the unpaid contributions, or

PAGE  11 -   PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY
             JUDGMENT

> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal and equitable relief as the court deems appropriate.

> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6221 of the Internal Revenue Code of 1986.

29 U.S.C. § 1132(g)(2) (emphasis added).  As the emphasized language indicates, and as this court has repeatedly held, "section 1132(g)(2) is 'mandatory and not discretionary.'" *Northwest Administrators, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996), quoting *Operating Engineers Pension Trust v. Beck Engineering & Surveying Company*, 746 F.2d 557, 569 (9th Cir. 1984).  Moreover, the ERISA plaintiffs are entitled to both liquidated damages and interest:

> [b]ecause we hold that the Trusts are the prevailing party, on remand they are entitled to all of the relief mandated under section 1132(g)(2).  Under subsection (A), they should be awarded the full amount of unpaid contributions[,] under subsection (B), they are entitled to interest on this amount.  They should also receive the appropriate amount under subsection (C).

*Operating Engineers Pension Trust v. A-C Company*, 859 F.2d 1336, 1342-43 (9th Cir. 1988).

The ERISA plaintiffs must meet three requirements for the relief mandated by 29 U.S.C. § 1132(g)(2): (1) the employer must be delinquent in the payment of contributions at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award.  *Northwest Administrators*, 104 F.3d at 257.  In this case, all three requirements are met.  First,

PAGE  12 -   PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY
JUDGMENT

defendant was delinquent at the time plaintiffs filed this action.  Second, the Trust Funds are entitled to a judgment against the defendants.  Third, as quoted above, section 3.4 of the Trust Agreements provide for interest and liquidated damages.  Auvil Dec., ¶¶ 12 and 14, and Exs. B-E.

       3.    <u>The Trust Funds are Entitled to the Cost of the Payroll Examination</u>

The Trust Funds are entitled to recover the payroll examination fee charged by the Pauly Firm as "other legal or equitable relief" pursuant to 29 U.S.C. § 1132(g)(2)(E). *A-C Company*, 859 F.2d at 1343 ("[b]ecause an award of audit costs to the prevailing party is consistent with the policy of encouraging full and fair contributions, we hold that audit costs are recoverable under subsection (E)").

Payroll examination costs are also recoverable as a matter of contract.  As explained above, by executing the Compliance Agreement, the employer agreed to be bound by the terms of the Trust Agreements that created the Trust Funds.  Section 3.5 of the Trust Agreements provides that in the event of litigation against an employer, the employer shall be required to pay costs and expenses incurred by the trustees, including reasonable audit fees. Auvil Dec., ¶¶ 13 and 14, and Exs. B-E.

       4.    <u>The Trust Funds are Entitled to their Reasonable Attorney's Fees</u>

The Trust Funds are entitled to recover their attorney's fees under ERISA.  29 U.S.C. § 1132(g)(2)(D).  As was the case with liquidated damages, an award of attorney's fees in mandatory under the circumstances of this case.  *Northwest Administrators*, 104 F.3d at 257.

PAGE  13 -   PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY
                       JUDGMENT

The Trust Funds are also entitled to recover their attorney's fees as a matter of contract.  Section 3.5 of the Trust Agreements, quoted in full above, provides that in the event legal action to collect delinquent contributions is required, the employer is responsible for "attorney's fees incurred prior to trial, at trial or on appeal."  Auvil Dec., ¶¶13 and 14, and Exs. B-E.

     5.    <u>Defendant's Arguments Lack Merit</u>

Defendant makes the following arguments as to why it is not liable:  (1) this court lacks subject matter jurisdiction because defendant never executed a collective bargaining agreement; (2) there was no mutual assent by the parties; (3) plaintiffs' claims are barred by the "NLRB Contract Bar Rule"; and (4) plaintiffs are equitably estopped from seeking to collect the contributions and union dues in question.  For the reasons set forth below, none of these defenses have merit, and plaintiffs are entitled to summary judgment.

(a)  <u>This Court has Subject Matter Jurisdiction</u>

Although defendant argues that ERISA does not grant this court subject matter jurisdiction over the present dispute, ERISA is only one of two bases for subject matter jurisdiction in this case.  ERISA does confer subject matter jurisdiction.  29 U.S.C. § 1132(e).  In addition, subject matter jurisdiction is conferred by the LMRA, 29 U.S.C. § 185(a).  *Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 984 (9th Cir.), *cert denied*, 528 U.S. 1156 (1999).

Citing *Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co., Inc.*, 484 U.S. 539 (1988), *Office & Professional*

PAGE  14 -   PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY
                  JUDGMENT

*Employees International Union, Local 95 v. Wood County Telephone Company*, 408 F.3d 314 (7th Cir. 2005), and 29 U.S.C. § 1392(a), defendant first argues that this court lacks subject matter jurisdiction over this claim because defendant had no "obligation to contribute."  Defendant's Memorandum at 1-4; 8-10.  Defendant's argument appears to be this:  First, one section of ERISA provides that

> every employer who is <u>obligated to make contributions</u> to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145 (emphasis added).  Defendant appears to concede that if it had an obligation to contribute, the federal courts would have jurisdiction over a claim arising out of its failure to contribute.

Second, another section of ERISA provides that

> [f]or purposes of this part, the term "obligation to contribute" means an obligation to contribute arising –
>
> > (1) under one or more collective bargaining agreements, or
> >
> > (2) as a result of a duty under applicable labor-management relations law, but
>
> does not include an obligation to pay withdrawal liability under this section or to pay delinquent contributions.

29 U.S.C. § 1392(a).

Third, the only agreement defendant ever signed was the Compliance Agreement; defendant never signed a "collective bargaining agreement" with the Union. Because defendant never signed a "collective bargaining agreement," and because the

PAGE  15 -  PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY JUDGMENT

original Compliance Agreement "expired," defendant contends it had no "obligation to contribute," and this court lacks jurisdiction to consider plaintiffs' claims.

Defendant is wrong for a number of reasons.

(i) *Advanced Lightweight Concrete* held that "ERISA provides no jurisdiction to enforce *noncontractual* obligations, specifically, an employer's obligations under the National Labor Relations Act to make pension contributions *post*-contract. *UA Local 343 of the United Association of Journeymen & Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1995) (emphasis in original). In contrast, where the suit "concerns *contractual* obligations, namely the employer's obligation to contribute during the agreement's term, jurisdiction under ERISA is * * * proper." *Id*. (emphasis in original).

In *Advanced Lightweight Concrete*, the employer was a member of the Associated General Contractors of California. It was a party to two multi-employer collective bargaining agreements. Those agreements were set to expire on June 15, 1983. On April 1, 1983, the employer told the two unions that it would not be bound by the terms of the MLAs after the current agreements expired on June 15, 1983.

Although the employer and the unions continued to negotiate, they did not reach an agreement, and effective June 15, 1983 the employer stopped making fringe benefit contributions that were required by the then-expired collective bargaining agreement. In December of 1983, the trustees of the eight trust funds to which the employer had previously been making fringe benefit contributions filed suit in federal court, contending

PAGE  16 -   PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY JUDGMENT

that the employer's unilateral decision to change the terms and conditions of employment by discontinuing the fringe benefit contributions constituted a breach of its duty to bargain in good faith in violation of the terms of section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) ("the NLRA").

The trust funds based federal jurisdiction on two provisions of ERISA, 29 U.S.C. § 1132(g)(2) and 29 U.S.C. § 1145. The employer moved to dismiss, contending that the district court lacked jurisdiction, and that the National Labor Relations Board ("NLRB") had exclusive jurisdiction over the trust funds' claims to collect contributions that accrued after the collective bargaining agreements expired but before an impasse in bargaining. The Court agreed with the employer, holding that ERISA did not confer subject matter jurisdiction over claims to collect post-contract obligations. *Id*. at 548-49.

Defendant's argument is comparing apples to oranges because *Advanced Lightweight Concrete* deals with the situation where a bargaining agreement had expired, and the rights and obligations of the parties were then imposed by the NLRA and not by the terms of a bargaining agreement. Under that situation, the federal courts do not have jurisdiction under ERISA to adjudicate the dispute. *Advanced Lightweight Concrete*, 484 U.S. at 549. In contrast, where, as here, the Trust Funds contend that fringe delinquent contributions are due under a contract, ERISA does supply this court with jurisdiction. *Id*. at 547.

Plaintiffs are unable to determine how *Wood County Telephone* has any application to this case. *Wood County Telephone* involved a lawsuit to compel an employer to arbitrate a grievance brought by the union pursuant to a collective

PAGE  17 -  PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY
                      JUDGMENT

bargaining agreement.  That grievance arose after the union gave notice to the employer to reopen the collective bargaining agreement to negotiate wages, hours, and conditions of employment.  The issue before the court was whether that notice to reopen terminated the collective bargaining agreement or whether the collective bargaining agreement remained in effect while the parties continued contract negotiations.  The court held that the notice from the union to "reopen" the collective bargaining agreement was not a notice of termination.  As a result, the collective bargaining agreement remained in effect during contract negotiations and the employer had a duty to arbitrate the grievance that arose under the collective bargaining agreement.  There is no similar issue in this case, and *Wood County Telephone* is simply inapplicable here.

(ii)  Defendant also argues that it had "no obligation to contribute" under 29 U.S.C. § 1392(a).  That argument fails because that statute has nothing to do with the issues in the present case.  The statute defines "obligations to contribute" only "for purposes of <u>this part</u>."  *Id*. (emphasis added).  "This part" is Part IV of ERISA, governing plan termination insurance.  29 U.S.C. §§ 1301-1461.  This case does not involve plan termination insurance, and 29 U.S.C. § 1392(a) simply has no application.

(iii)  Defendant also argues that it cannot be liable for the fringe benefit contributions and union dues because it never signed a collective bargaining agreement.  Defendant first asserts that "[t]here was no collective bargaining agreement (CBA) in effect under which Plaintiffs can collect the alleged delinquent contributions, because there was no CBA signed by defendant."  Defendant's

PAGE  18 -   PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY JUDGMENT

Memorandum, at 2-3. Next, defendant acknowledges that "defendant's president

signed a Compliance Agreement * * * on July 20, 1995," and that "[t]his Compliance

Agreement incorporates by reference the Collective Bargaining Agreement (CBA)

signed by the plaintiff Union with the General and Concrete Contractors Association,

Inc." *Id.* at 3. Defendant then acknowledges that it was obligated to pay fringe benefit

contributions and union dues under that collective bargaining agreement through May

31, 2002 because defendant states:

> defendant mistakenly continued to make contributions on behalf of its employees
> which it was not required to do after June 1, 2002, when the first Master
> Agreement expired. The aforementioned Master Agreement required the benefit
> and dues contributions by the employers to the various plaintiffs. This was the
> one and only Compliance Agreement ever signed by defendant. Defendant was
> never presented a new Compliance Agreement to correspond with any
> successor CBAs.

Defendant's Memorandum, at 3-4. Elsewhere defendant argues that it

> no longer had an obligation to continue making contributions when the
> Compliance Agreement of July, 1995, expired. No new Compliance Agreement
> was ever signed by defendant; defendant never participated in any negotiations;
> and, defendant never signed any CBAs. * * *

> By the terms of the CBA, the Defendant was no longer obligated to
> contribute upon the expiration of the CBA.

Defendant's Memorandum, at 9-10.

Defendant's argument appears to be that by signing the Compliance Agreement

defendant became obligated to make the fringe benefit contribution and union dues

required by the MLA then in effect, but when the initial MLA expired, it was not obligated

to make any more contributions because it did not execute a new Compliance

Agreement.

PAGE  19 -   PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY
             JUDGMENT

As a threshold matter, defendant attempts to make an issue of plaintiffs' response to defendant's request for production number 1, where plaintiffs stated that "[d]efendant did not sign any CBAs."  Defendant's discovery requests drew a distinction between "collective bargaining agreements" ("CBAs"), a term which defendant did not define, and "Carpenters Compliance Agreements."  Cadonau Dec., ¶ 5, and Ex. B.  In answering the discovery requests, plaintiffs understood defendant's reference to CBAs to refer to the MLAs, as opposed to the Compliance Agreement.  *Id*.  It is undisputed that defendant signed the Compliance Agreement, and that defendant did not sign the MLAs.  As noted above, by signing a Compliance Agreement the employer binds itself to the referenced MLA.  Consequently, the fact that defendant did not sign the MLAs is irrelevant.

Defendant's argument that the Compliance Agreement was not in effect during the time relevant to this lawsuit (July 1, 2006 through June 30, 2006) is wrong because the Compliance Agreement twice states that by signing the Compliance Agreement defendant is agreeing to be bound not only by the terms of the MLAs then in effect, but also by the terms of any successive MLAs.  Defendant agreed in the Compliance Agreement

> that it will be bound and abide by all the terms, including wages, hours, and working conditions set forth in the principal Agreements shown below, and the terms and conditions of all successive principal Agreements as may be executed by the signatory parties thereto.

Ashback Dec., ¶ 2, Ex. A.

PAGE  20 -   PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY
            JUDGMENT

Furthermore, the Compliance Agreement contains an "evergreen clause," stating that the Compliance Agreement does not expire unless properly terminated by one of the parties:

> [t]his Agreement shall be effective as of the date hereof, and shall continue in effect during the terms of the applicable Agreements referred to above, and during the term of all successive Agreements. Either party may terminate his Agreement as of the termination date specified in the principal Agreements, or on the termination date specified in any successive Agreement, by giving the other party notice of an intention to terminate, by certified or registered mail, at least 90 but not more than 120 days in advance of such termination date.

*Id*.

Accordingly, defendant was bound by terms of not only the MLA in effect at the time that it signed the Compliance Agreement, but also by the terms of the successive MLAs. In addition, because neither defendant nor the Union gave a timely termination notice to the other party, the Compliance Agreement remained in effect.

In short, this court does have subject matter jurisdiction under ERISA and the LMRA because plaintiffs' action seeks to recover sums due based on a contractual obligation. That obligation arises from the Compliance Agreement, which never expired, and the MLAs in effect during the time of the audit period.

### (b) The Requisite Mutual Assent Exists

Citing state common law on contracts, defendant next argues that there was no meeting of the minds between the parties and no contract formed. Defendant's Memorandum, at 10. Defendant's argument is premised on the alleged understanding of defendants' principals that defendant was only obligated to make contributions for Union employees, and then only for the hours those Union employees worked on

PAGE  21 -  PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY JUDGMENT

"union jobs," which they understood to be jobs performed for Union general contractors. *Id*. Defendant complains that their erroneous understanding of defendant's obligations "was never corrected by the Union." *Id*. at 11.

As an initial matter, clear and specific language in labor agreements is strictly interpreted as a matter of federal law, notwithstanding that a particular state's common law of contracts might provide otherwise. *Employee Painters' Trust v. J&B Finishes*, 77 F.3d 1188 (9th Cir. 1996) (reversing district court for erroneously relying on state common law principles in interpreting a collective bargaining agreement and trust agreements); *Irwin v. Carpenters Health and Welfare Trust Fund for California*, 745 F.2d 553 (9th Cir. 1984) (same).

In this case, § 2.1 of each of the MLAs provides that "[t]his Agreement shall govern all types of construction work coming within the jurisdiction of the United Brotherhood of Carpenters and Joiners of American as recognized by the AFL-CIO Building and Construction Trade Department." Ashback Dec., ¶ 4, and Exs. B and C; ¶ 5, and Exs. D and E. Nothing in the MLAs limits the scope of the work performed by Union employees on "union jobs."

Assuming, *arguendo*, that defendant's principals did not understand the terms of the MLAs or that those terms were not explained to them by the Union, that is not a defense to enforcement of the plain language of the MLAs. *Operating Engineers Pension Trust v. Cecil Backhoe Service, Inc.*, 795 F.2d 1501 (9th Cir. 1986). In *Cecil*

*Backhoe* the employer signed a short-form agreement[7] with the Operating Engineers' Union.  The short-form agreement incorporated the terms of an MLA, which required the employer to make contributions to various trust funds.  The employer argued, *inter alia*, that the short-form agreements were not binding contracts because the union agents did not inform it of the legal consequences of signing.  The employer also argued that there was no mutual assent because it and the union had different understandings as to the employer's obligations under the MLA.  The court rejected these arguments:

> .  .  . the fact that Cecil did not fully understand the consequences of signing the agreements does not lead to the conclusion that there was no mutual assent and hence no contract.
>
> * * *  Cecil can point to no authority stating that the union business agents had a duty to explain to the employer the terms, conditions, or consequences of a collective bargaining agreement.  * * *  A party who signs a contract is bound by its terms regardless of whether he reads it or considers the legal consequences of signing it.
>
> The gist of Cecil's argument is that he was not aware of the legal consequences of signing the agreements.  This is not a valid defense.

*Id*. at 1504-05 (citations omitted).

In summary, the plain language of the Compliance Agreement and the MLA controls defendant's obligation to make fringe benefit contributions and pay union dues, regardless of whether anyone explained those obligations to defendant or defendant's principals believed otherwise.

---

[7] A "short form" agreement is another description of a "compliance agreement." *See* note 1.

PAGE  23 -  PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY JUDGMENT

### (c)   Defendant's NLRB Contract Bar Rule Argument is Inapposite

Defendant next argues that under the NLRB's "contract bar rule," its March 25, 2011 letter withdrawing recognition of the Union means that it is not obligated to make the contributions sought in this lawsuit.  Defendant's Memorandum, at 11.  Among other things, the contract bar rule "prohibits an employer from repudiating a collective bargaining agreement or withdrawing recognition of a union during the agreement's term, even if it has a good-faith belief that a union does not enjoy majority support." *National Labor Relations Board v. Cook County School Bus, Inc.*, 283 F.3d 888, 891 (7th Cir. 2002).  The contract bar rule applies to the life of a bargaining agreement, unless the agreement last more than three years; in this latter situation, the contract bar rule applies only during the first three years of the agreement.  *El Torito-La Fiesta Restaurants, Inc. v. National Labor Relations Board*, 929 F.2d 490, 492 (9th Cir. 1991).

Plaintiffs disagree that defendant's March 25, 2011 letter was effective to terminate the Compliance Agreement.  The court need not, however, address that issue because even if the March 25, 2011 letter was effective, the termination of the Compliance Agreement would be effective as of March 25, 2011, and could not eliminate obligations that arose before that date.  In this case, the audit period is July 1, 2006 through June 30, 2010 which, of course, is well before March 25, 2011.[8]

---

[8]  Plaintiffs note that defendant's November 19, 2009 and March 25, 2011 attempts to terminate the Compliance Agreement are inconsistent with its litigation position that it was not bound by the Compliance Agreement after the initial MLA expired.

PAGE  24 -   PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY
                    JUDGMENT

(d)  <u>Plaintiffs are not Estopped from Seeking to Recover the Contributions</u>

Finally, defendant argues that plaintiffs are estopped from seeking to recover the contributions sought in this lawsuit.  Defendant's Memorandum, at 11-12.  Defendant argues that for 15 years it only made contributions for its two union employees and then only for hours worked by them on "union jobs," and that no one from the Union ever told defendant that this was wrong.  *Id*.

Estoppel does not provide a defense in this case.   The party relying on an equitable estoppel defense must establish four general requirements:

> (1)  the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Cecil Backhoe*, 795 F.2d at 1507.

Defendant's estoppel defense fails in this case as to the Trust Funds because there is no evidence of the first element of estoppel.  For estoppel to be applicable, defendant would have to introduce evidence that the Trust Funds were aware that defendant was not making contributions for all bargaining unit work, and did not take any action to collect the delinquent contributions.   In this case, although defendant suggests that a Union representative was present on jobs where defendant failed to make contributions, the Union and its representatives are not agents of the Trust Funds, the Trust Funds "cannot be estopped based on alleged actions or acquiescence of the union or its agents."  *Id*. Defendant has presented no evidence that the Trust Funds were aware, prior to the audit, that defendant's employees were performing bargaining unit work and defendant was not making the required contributions.  In the

PAGE  25 -   PLAINTIFFS' MEMORANDUM REGARDING MOTIONS FOR SUMMARY
             JUDGMENT

absence of such evidence, defendant cannot show that the Trust Funds "knew the facts," and its estoppel defense must fail.

As for the claim for unpaid union dues, defendant's estoppel defense fails for at least the reason that there is no evidence of the second element of estoppel, that the party seeking to be estopped "intend[ed] that his conduct shall be acted upon or must so act that the party asserting the estoppel has a right to believe it is so intended." Defendant has presented no evidence that, by merely having a Union representative present on occasions on jobs where defendant's employees were working, and not thereafter demanding, in the absence of a payroll audit, that defendant pay union dues based on bargaining unit work performed on those jobs, the Union intended that defendant not pay Union dues, or that defendant had the right to rely on the absence of an immediate demand for payment of Union dues

### B.  Defendant is not Entitled to Summary Judgment

Plaintiffs have addressed each of the arguments that defendant made in support of its motion for summary judgment in sections III(A)(5)(a)-(d) of this memorandum.  As noted therein, defendant's arguments lack merit.  For those reasons, defendant is not entitled to summary judgment, and its motion should be denied.

## IV.  CONCLUSION

There is no genuine issue of material fact that defendant did not make all of the contributions required by the Compliance Agreements and the MLAs.  Plaintiffs are entitled to recover the unpaid contributions, together with interest, liquidated damages, the payroll examination fee, and attorney's fees.  None of the defendant's defenses

defeat plaintiffs' claim for relief.  Accordingly, the court should grant plaintiffs' motion for summary judgment and deny defendant's motion for summary judgment.

DATED  this 9th day of September, 2011.

BROWNSTEIN, RASK, SWEENEY, KERR,
GRIM, DeSYLVIA & HAY, LLP


By: /s/ Paul G. Dodds
STEPHEN H. BUCKLEY, OSB #80178
PAUL G. DODDS, OSB #87203
Attorneys for Plaintiffs