**Stephen H. Buckley**, OSB #80178
E-mail:  shb@brownrask.com
**Paul G. Dodds**, OSB #87203
E-mail: pgd@brownrask.com
Brownstein, Rask, Sweeney, Kerr,
  Grim, DeSylvia & Hay, LLP
1200 S.W. Main Street
Portland, OR  97205-2040
Telephone: (503) 221-1772
Facsimile:   (503) 221-1074

     Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TRUSTEES OF THE OREGON-WASHINGTON CARPENTERS-EMPLOYERS HEALTH AND WELFARE TRUST FUND, et al. | Case No. 10-CV-1047-KI |
| Plaintiffs, | PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| ANDERS CERTIFIED WELDING, INC. | |
| Defendant. | |

I.  <u>INTRODUCTION</u>

In its memorandum in opposition to plaintiffs' motion for summary judgment, defendant makes only one factual argument and one legal argument.  Defendant's only

PAGE 1 -    PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S
               MOTION FOR SUMMARY JUDGMENT

factual argument, which it repeats no less than five times, is that defendant never signed a "collective bargaining agreement":

> the one and only so-called Compliance Agreement signed by the parties over sixteen years ago, on July 20, 1995, was the only agreement ever signed by the parties. No collective bargaining agreement was ever signed by the parties.

Defendant's Response Memorandum, at 1-2,

> the plaintiffs must have a valid signed collective bargaining agreement in effect to collect the damages which they are alleging. No such agreement exists.

Defendant's Response Memorandum, at 2,

> . . . no master agreements with defendant were ever negotiated or ever signed. The only agreement was the Compliance Agreement signed back in 1995.

Defendant's Response Memorandum, at 2,

> . . . there is no CBA under which plaintiffs can bring their actions,

Defendant's Response Memorandum, at 3,

> . . . the union <u>never</u> negotiated with the employer, and the only document signed by the defendant was the so-called Compliance Agreement, dated July 20, 1995.

Defendant's Response Memorandum, at 4 (emphasis in original).

The only legal argument defendant advances is its argument that under *Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co., Inc.*, 484 U.S. 539 (1988), plaintiffs cannot prevail because "[t]here are no signed collective bargaining agreements between defendant and the plaintiffs, which are required under ERISA." Defendant's Response Memorandum, at 3.

As explained in plaintiffs' initial memorandum, and as further explained below, defendant is wrong, and the court should grant plaintiffs' motion for summary judgment.

PAGE 2 -   PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S
                MOTION FOR SUMMARY JUDGMENT

II. ARGUMENT

A. Defendant's Argument is Internally Inconsistent, Inconsistent with its Conduct, and Legally Incorrect

Defendant appears to be making one of two arguments. First, defendant could be arguing that plaintiffs have no claim under ERISA because defendant never signed the Master Labor Agreements ("MLAs") themselves, as opposed to the Compliance Agreement. Second, defendant could be arguing that plaintiffs have no claim under ERISA because defendant never signed a new compliance agreement after the MLAs that were in place at the time defendant signed the Compliance Agreement expired. Neither argument has merit.

1. In its initial memorandum defendant argued that

> [t]here was no collective bargaining agreement (CBA) in effect under which Plaintiffs can collect the alleged delinquent contributions, because there was no CBA signed by the defendant. The defendant's president signed a Compliance Agreement (Exhibit 4) on July 20, 1995. This was the only written document pertaining to the collective bargaining relationship ever signed between defendant and plaintiffs. This Compliance Agreement incorporates by reference the Collective Bargaining Agreement (CBA) signed by the plaintiff Union with the General and Concrete Contractors Association, Inc. (Union) (sic). Defendant never authorized this association, or any other associations, to act on its behalf in the collective bargaining process.

Defendant's Initial Memorandum, at 3.

This argument, although factually correct – defendant did sign only the Compliance Agreement – is internally inconsistent, inconsistent with defendant's conduct, and legally incorrect. In its initial memorandum defendant stated that "defendant mistakenly continued to make contributions on behalf of its employees which it was not required to do after June 1, 2002, when the first Master Agreement

PAGE 3 -    PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

expired." *Id*. (emphasis added). Defendant thus acknowledges that (1) it <u>was</u> required to make contributions under the MLA in place when it signed the Compliance Agreement even though (2) defendant never signed those MLAs. Presumably, therefore, defendant is not truly arguing that an employer must sign the MLA itself, as opposed to a Compliance Agreement, in order to be bound to the terms of the MLA; if that was defendant's argument, defendant would not be acknowledging that it was required to make contributions under the original MLAs.

If this is defendant's argument, it is legally incorrect. There is no requirement that an employer, such as defendant, sign the MLA itself, as opposed to signing a compliance agreement or "short form" agreement. As pointed out in plaintiffs' initial memorandum, a "compliance agreement" or "short form agreement" is an agreement by which an employer "agrees to be bound by a collective bargaining agreement negotiated by a union and a multi-employer bargaining group representing [employers] within a particular jurisdiction and pays contributions according to the terms of such agreements." *Carpenters Local Union No. 345 Health and Welfare Fund v. W.P. George Construction Co.*, 792 F.2d 64, 68 (6th Cir. 1986). As another court explained,

> [t]he purpose of the short form [agreement] is to bring employers <u>who are not signators</u> to the MLA into line with the uniform wages and working conditions union carpenters have throughout the county. This objective is explicitly stated in Article II, and is reflected in the nickname short forms have in the trade as "me too" agreements. *See Brogan v. Swanson Painting Co.*, 101 LRRM 2068 (W.D. Wash. 1979). The employer is intended to be placed in an economic posture essentially no better or nor worse that employers who are signators to the MLA.

*Zinser-Furby, Inc. v. San Diego County District Council of Carpenters*, 516 F. Supp. 952, 955 (S.D. Cal. 1981), *aff'd*, 681 F.2d 1171 (9th Cir. 1982) (emphasis added). *See*

PAGE 4 -   PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

*also Arizona Laborers, and Cement Masons Local 395 Health and Welfare Trust Fund v. Conquer Cartage Co.*, 753 F.2d 1512, 1518 (9th Cir. 1985) ("the basic purpose of a 'me-too agreement' is to allow independent, usually smaller, employers to obtain all the benefits of the master collective bargaining agreement that is negotiated by the principal employers in the industry without having to participate in the industry negotiations, or to engage in separate negotiations, every few years").

In the context of multi-employer bargaining, the MLA is negotiated and signed by the union and the multi-employer bargaining association; individual employers do not, and need not, engage in negotiating or signing the MLA. *E.g. id.* at 1514 ("the Employer, though not a member of any of the contractor associations that negotiated the Master Labor Agreements, executed a Memorandum Agreement that incorporated the 1965-70 Arizona Master Labor Agreement and all of its successor agreements").

2.  Alternatively, defendant could be arguing that plaintiffs have no claim under ERISA because defendant never signed a new compliance agreement after the MLAs that were in place at the time defendant signed the Compliance Agreement expired. In its initial memorandum defendant argued that "[i]n actuality, this defendant no longer had an obligation to continue making contributions when the Compliance Agreement of July, 1995, expired. No new Compliance Agreement was ever signed by defendant. * * * By the terms of the CBA, the Defendant was no longer obligated to contribute upon the expiration of the CBA." Defendant's Initial Memorandum, at 9-10.

This argument is wrong because it ignores the "evergreen" provision of the Compliance Agreement, which states that:

PAGE 5 -    PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

> <u>[t]his Agreement shall be effective as of the date hereof, and shall continue in effect during the terms of the applicable Agreements referred to above, and during the term of all successive Agreements.</u>  Either party may terminate his Agreement as of the termination date specified in the principal Agreements, or on the termination date specified in any successive Agreement, by giving the other party notice of an intention to terminate, by certified or registered mail, at least 90 but not more than 120 days in advance of such termination date.

Ashback Dec., ¶ 2, Ex. A (emphasis added).

Under this provision, defendant was bound not only by terms of the MLA in effect at the time that it signed the Compliance Agreement, but also by the terms of the successive MLAs.  *See e.g. Construction Teamsters Health and Welfare Trust v. Con Form Construction Corp.*, 657 F.2d 1101, 1103 (9th Cir. 1981) ("[i]t is clear that a signatory to a Short Form Agreement can agree to be bound by future modifications, extensions and renewals of an MLA").  If the employer does not wish to be bound by future modifications, extensions or renewals of the MLA, it must give the notice of termination required by the applicable terms of the compliance agreement.  *Id*.  In this case, as noted in plaintiffs' initial memorandum, defendant never provided timely notice of termination, and thus its obligation to make contributions under the Compliance Agreement and MLAs continued.

    B.    <u>*Advanced Lightweight Concrete* has no Application</u>

The only legal authority cited by defendant is *Advanced Lightweight Concrete*.  In *Advanced Lightweight Concrete* the employer was a member of the Associated General Contractors of California.  It was a party to two multi-employer collective bargaining agreements, which were set to expire on June 15, 1983.  On April 1, 1983,

the employer told the two unions that it would not be bound by the terms of the MLAs after the current agreements expired on June 15, 1983.

Although the employer and the unions continued to negotiate, they did not reach an agreement, and effective June 15, 1983 the employer stopped making fringe benefit contributions that were required by the then-expired collective bargaining agreement. At that point, and until the parties reached in impasse in bargaining, the employer was statutorily required, by that National Labor Relations Act, 29 U.S.C. § 158(a)(5), to continue to make the contributions specified in the expired collective bargaining agreement:

> [d]uring the negotiations following the expiration of a collective bargaining agreement, the employer is required to "maintain the status quo as to wages and working conditions." The obligation to maintain the status quo encompasses the obligation to continue making pension fund contributions. This obligation continues until negotiations reach an impasse.

*Producers Dairy Delivery Co., Inc. v. Western Conference of Teamsters Pension Trust Fund*, 654 F.2d 625, 627 (9th Cir. 1981), quoting *Peerless Roofing Co., Ltd. v. NLRB*, 641 F.2d 734, 736 (9th Cir. 1981). "[A]n employer's failure to honor the terms and conditions of an expired collective-bargaining agreement pending negotiations on a new agreement constitutes bad faith bargaining in breach of sections 8(a)(1), 8(a)(5) and 8(d) of the National Labor Relations Act." *Advanced Lightweight Concrete*, 484 U.S. at 544, n. 6.

In December of 1983, the trustees of the eight trust funds to which the employer had previously been making fringe benefit contributions filed suit in federal court, contending that the employer's unilateral decision to change the terms and conditions of

PAGE 7 -    PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S
            MOTION FOR SUMMARY JUDGMENT

employment by discontinuing the fringe benefit contributions constituted a breach of its duty to bargain in good faith in violation of the NLRA.  The trustees' claim was based, therefore, on the statutory obligation imposed upon the employer by the NLRA, and not on the collective bargaining agreement, which had expired.

The trust funds based their claims on two provisions of ERISA, 29 U.S.C. § 1132(g)(2) and 29 U.S.C. § 1145.  The employer moved to dismiss, contending that the district court lacked jurisdiction, and that the National Labor Relations Board had exclusive jurisdiction over the trust funds' claims to collect contributions that accrued after the collective bargaining agreements expired but before an impasse in bargaining.  The court agreed with the employer, and held that the remedies provided by ERISA under 29 U.S.C. §§ 1132(g)(2) and 1145 did not apply to claims based on the statutory obligation imposed by the NLRA:

> [t]he legislative history of these provisions explains that Congress added these strict remedies to give employers strong incentive to honor their contractual obligations to contribute and to facilitate the collection of delinquent accounts.  That history contains no mention of the employer's statutory duty to make postcontract contributions while negotiations for a new contract are being conducted.  Thus, both the text and the legislative history of §§ 515 and 502(g)(2) [of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1145] provide firm support for the Court of Appeals' conclusion that this remedy is limited to the collection of "promised contributions" and does not confer jurisdiction on district courts to determine whether an employer's unilateral decision to refuse to make postcontract contributions constitutes a violation of the NLRA.

*Id*. at 547-49 (footnotes omitted).

*Advanced Lightweight Concrete* thus held that "ERISA provides no jurisdiction to enforce *noncontractual* obligations, specifically, an employer's obligations under the National Labor Relations Act to make pension contributions *post*-contract."  *UA Local*

PAGE 8 -    PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S
            MOTION FOR SUMMARY JUDGMENT

*343 of the United Association of Journeymen & Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir.), *cert. denied*, 516 U.S. 912 1995) (emphasis in original).

The present case does not involve defendant's statutory obligation to make post-contract contributions under the NLRA. Instead, it involves the defendant's contractual obligation to make contributions under the terms of the Compliance Agreement and incorporated MLAs and Trust Agreements. *Advanced Lightweight Concrete* thus has no application to the present case, and in fact, its discussion makes clear that ERISA <u>does</u> provide jurisdiction over plaintiffs' claims in this case.

  C. <u>This Court also has Subject Matter Jurisdiction under the Labor-Management Relations Act</u>

Defendant's jurisdictional argument is that ERISA does not provide this court with subject matter jurisdiction. As explained above, and in plaintiffs' initial memorandum, defendant is wrong. Even if, however, defendant was right on its ERISA jurisdictional argument, this court also has subject matter jurisdiction over the plaintiffs' claim under the Labor-Management Relations Act, 29 U.S.C. § 185(a) ("LMRA"). *Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 984 (9th Cir.), *cert denied*, 528 U.S. 1156 (1999) (LMRA grants subject matter jurisdiction over "actions to recover fringe benefits stemming from collective bargaining agreements"). Consequently, even if defendant was right on its ERISA-based argument, the court would still have subject matter jurisdiction over plaintiffs' claim for relief under the LMRA.

III. <u>CONCLUSION</u>

ERISA and the LMRA confer subject matter jurisdiction over this action to collect delinquent fringe benefit contributions and union dues that are owed as a matter of contract. This being the case, and because defendant makes no other arguments in response to plaintiffs' motion for summary judgment, that motion should be granted.

DATED this 29th day of September, 2011.

                                            BROWNSTEIN, RASK, SWEENEY, KERR,
                                            GRIM, DeSYLVIA & HAY, LLP

                                            By: <u>/s/ Paul G. Dodds</u>
                                                  STEPHEN H. BUCKLEY, OSB #80178
                                                  PAUL G. DODDS, OSB #87203
                                                  Attorneys for Plaintiffs